UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

JACOB W. BURKE,

    Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.

Case No. 1:20-CV-156 JD

**OPINION AND ORDER**

    Plaintiff Jacob Burke applied for social security disability benefits and supplemental security income alleging that he has been unable to work since July 2013 because he is disabled. After an administrative hearing, an administrative law judge ("ALJ") issued a decision finding Mr. Burke was not disabled. Mr. Burke now asks the Court to reverse the finding and remand for further proceedings. The matter is fully briefed and ripe for decision. (DE 12, DE 15, DE 18.) For the reasons set forth below, the Court reverses the Commissioner's decision and remands for further proceedings.

**I.    Factual Background**

    Mr. Burke filed an application for social security disability insurance benefits and supplemental security income in October 2014, alleging he had been unable to work since July 20, 2013, because of physical issues related to diabetes, obesity, and vision trouble as well as

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. No further action needs to be taken because of this substitution. 42 U.S.C. § 405(g).

difficulties with mental health and cognition. (R. 14.) [2] After a hearing where Mr. Burke testified, the ALJ entered an unfavorable decision on May 19, 2017. (R. 30.) On March 30, 2018, the Appeals Council declined review of the ALJ's decision, thus making it the final decision of the Commissioner. (R. 1–7.) Mr. Burke timely appealed that decision to this Court, which remanded the decision on December 20, 2018. (R. 1545–61.) The Court, in its opinion ordering remand, directed the ALJ to consider whether to supplement the record with medical evidence that may have addressed Mr. Burke's allegations that he was previously treated for exposure to chemicals that affected his memory. It also directed the ALJ to consider other mental health and cognitive related considerations as well as certain vision and energy considerations given the ALJ did not appear to incorporate those considerations into her determination of the RFC. (R. 1558–59.)

While his 2014 claim was pending on appeal, Mr. Burke filed a new application for social security benefits on April 27, 2018. This claim was denied initially and on reconsideration. (R. 1514–27, 1529–43.) Then, on January 25, 2019, the Appeals Council officially vacated Mr. Burke's remanded 2014 claim, consolidated it with Mr. Burke's 2018 claim, and remanded the now consolidated claims to the same ALJ who had issued the original decision on the 2014 claim. The Appeals Council instructed the ALJ to issue a new decision on the consolidated claims and the ALJ held a hearing on the consolidated claims on August 26, 2019, before coming to her new decision.

---

[2] Mr. Burke had applied for social security benefits once before, claiming he had been unable to work since August 25, 2011. After a separate hearing where Mr. Burke testified, the ALJ considering that earlier application issued an unfavorable decision. (R. 96.) Mr. Burke did not appeal that unfavorable decision and that earlier decision does not impact the Court's opinion here.

Prior to the onset of his disability, Mr. Burke obtained his bachelor's and associate's degrees. (DE 12-1.) At the time he applied for disability in 2014, he had previously worked in a variety of positions including as an activity assistant in a nursing home, in retail and food service jobs, for Comcast, and as a tax preparer. (*Id.*) He was most recently employed as a delivery driver in 2014, a job he did with the help of a vocational rehabilitation program.

Mr. Burke's relevant medical diagnoses date to 1998 when he was diagnosed with diabetes. (R. 315, 365, 389.) As a result of his diabetes, Mr. Burke has retinopathy, macular edema, and peripheral neuropathy, which causes tingling and sharp pain in his hands and feet. (R. 317, 366, 389, 633, 795, 2170.) Mr. Burke's eye complications related to his retinopathy and macular edema have gotten progressively worse over time, resulting in retinopathy in both eyes and repeated episodes of vitreous hemorrhaging that greatly interfere with his ability to see. (R. 316, 624, 794, 838, 875, 1299.) His eye specialist has directed him to sleep at a 45-degree angle to help drain the bleeding from his eyes. (R. 59.) He has also been directed to avoid straining his eyes and strenuous activities. (R. 372, 389, 619, 858, 861.) As a result of these eye complications, Mr. Burke has had repeated intravitreal eye injections and laser procedures to both eyes. (R. 365, 479, 619–21, 623–24, 763, 1301, 3049.) He also has a severe sensitivity to glare and photophobia, including indoors, which causes objects to blend together as his eyes cannot appreciate the subtle contrast changes. (R. 490.) He testified that he cannot read with both eyes open but instead must close one eye and bring whatever he is reading closer to the open eye. (R. 1349.) He also testified to having to magnify text on a computer to read it (R. 479, 802) and that he has reduced depth perception. (R. 490, 794, 801–03.)

Mr. Burke's diabetes has also resulted in neuropathy and venous insufficiency in his legs and feet that is present along with persistent swelling and skin conditions in his legs and feet. (R.

366, 389–92, 395, 445–46, 635–36, 814, 1280–81, 2038–44, 2091, 2101, 2106, 2117, 2129, 2145, 2168–69, 2175–76, 2387–88, 2404, 2546–47, 2845–46.) The swelling has affected his range of motion and ability to walk since at least 2013. Mr. Burke is also morbidly obese, which further adds to his reduced range of motion and reduced ability to move around. (R. 366, 633, 654, 1279–81, 2091, 2166–70.) He wears compression or diabetic socks to help with the swelling and regularly sits in a recliner on the advice of his doctors so that he can elevate his legs. (R. 1353–54.)

     Mr. Burke previously struggled with depression and was diagnosed with a personality disorder. He was treated in an outpatient setting and with anti-depressants from July 2013 through February 2015. (R. 278, 336–37, 346–63, 1018–37, 1094–1169.) He has reported memory problems from a toxic chemical exposure in 1998 and a psychological evaluation in 2013 demonstrated that his "Working Memory" and "Processing Speed" scores on the Wechsler Adult Intelligence Scale-IV fell in the borderline range, significantly lower than his other scores. (R. 789.) Mr. Burke's father also testified in the 2017 hearing about his short-term memory and described it as "not really good." (R. 64.)

     At the most recent hearing before the ALJ in 2019, Mr. Burke testified to his daily activities and how he spends his time. Mr. Burke testified that his left eye was all blurry at the time and that he has a blurry "dime-sized thing" in his right eye, but that his left eye is worse. (R. 1347.) He also testified to having low energy, stated that it was hard for him to focus, that mental clarity was difficult for him, and that he suffers from short-term memory loss. (R. 1350.) He additionally testified that he can only stand in one spot without holding onto something for five to ten minutes before feeling the need to sit down, that he can only walk about a block before needing to sit down, and that he can occasionally carry some groceries into the house but cannot

lift and carry things with any consistency. (R. 1356–57.) He also testified to being in pain during the hearing because he does not generally sit in chairs that are not recliners and that to sit on chairs other than recliners causes pain in his legs and knees. (R. 1354, 1356.) This testimony was consistent with his testimony from the 2017 hearing, during which he testified that he struggled with vision problems, neuropathy, and diabetes-related limitations. (R. 1573–74.) Mr. Burke attributed his inability to work to a combination of factors including his poor vision, his energy level, his mobility issues, and his inability to keep pace. (R. 1585.)

Toward the end of the 2019 hearing, Mr. Burke's representative posed a hypothetical to the Vocational Expert ("VE"). The individual in the hypothetical had Mr. Burke's age, education, and work experience; was limited to sedentary work with occasional handling, fingering, and feeling with the dominant hand; had to avoid temperature extremes and exposure to weather; and could handle only routine and simple work processes, a goal-oriented pace rather than a production rate, and superficial contact with supervisors. (R. 1370.) The VE testified that the hypothetical individual would not be able to perform Mr. Burke's past work or any entry-level sedentary work. (R. 1370–71.) After hearing the testimony at the hearing, the ALJ sent the VE an interrogatory with a new hypothetical question reflecting the ALJ's ultimate residual functional capacity ("RFC") assessment. (R. 1789–93.) The RFC finding was that Mr. Burke:

> has the residual functional capacity to perform light work . . . except that the claimant can stand and/or walk, in combination, for two hours in an eight hour workday, and he can sit for six hours in an eight hour workday . . . he can perform work activity requiring continuous far acuity, depth perception and color vision, he is unable to read very small print, but he can avoid ordinary hazards in the workplace, he can read ordinary newspaper or book print, he can view a computer screen, and he can determine differences in the shape and color of small objects such as screws, nuts, and bolts . . . .

(R. 1317–18.) The VE, in response to the interrogatory, determined an individual with that RFC could find employment in the national economy. (R. 1797.)

5

Ultimately, the ALJ, considering the consolidated claims and the testimony she elicited, issued a decision on December 10, 2019. (R. 1307–36.) The ALJ found that Mr. Burke has severe impairments, including chronic venous insufficiency, diabetes with diabetic retinopathy and macular edema, status post right eye vitrectomy, varicosity in the lower extremities, venous stasis dermatitis, and obesity. (R. 1313.) But despite those impairments, the ALJ determined that Mr. Burke was capable of light work with additional physical limitations consistent with the RFC determination. (R. 1317–18.) The ALJ then relied on the VE's response to the interrogatory to find that Mr. Burke could find employment. (R. 1325). Based on those findings, the ALJ determined that Mr. Burke was not disabled.

Mr. Burke did not submit written exceptions to the Appeals Council and the Appeals Council did not assume jurisdiction. Thus, the ALJ's decision became the final decision of the Commissioner on February 9, 2020. (R. 1308.) Mr. Burke subsequently appealed the Commissioner's decision and, as the Social Security Administration noted in its brief, this Court has jurisdiction over the appeal pursuant to 42 U.S.C. § 405(g).[3] (DE 15 at 2.)

## II.     Standard of Review

This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

---

[3] Section 405(g) provides for judicial review of any final decision after a hearing, which contains two elements: a jurisdictional requirement that claims be presented to the agency and a waivable requirement that the administrative remedies prescribed be exhausted. The Supreme Court has found that "§ 405(g) delegates to the SSA the authority to dictate which steps are generally required, see *Sims*, 530 U.S. at 106, 120 S.Ct. 2080, exhaustion of those steps may not only be waived by the agency, see *Weinberger v. Salfi*, 422 U.S. 749, 767, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), but also excused by the courts, see *Bowen v. City of New York*, 476 U.S. 467, 484, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *Eldridge*, 424 U.S. at 330, 96 S.Ct. 893." *Smith v. Berryhill*, 139 S. Ct. 1765, 1773–74 (2019).

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also provide a "logical bridge" between the evidence and the conclusions within the decision. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to

determine whether the claimant qualifies as disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

See *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. § 404.1522(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**IV.    Discussion**

Mr. Burke argues that the ALJ's decision should be remanded for two reasons. First, he argues that the ALJ erred by failing to fulfill her duty to develop the record in relation to his mental health impairment. (DE 12 at 3.) Second, he argues that the ALJ's RFC assessment is incomplete and the result of an improper analysis of the record in large part because the ALJ failed to adequately tie portions of the RFC to evidence in the record. (*Id.* at 7.) The Court only addresses Mr. Burke's second argument because it agrees that the ALJ failed to adequately tie portions of the RFC to evidence in the record and finds that remand is required on that basis. The parties can address any remaining arguments on remand.

An ALJ is charged with determining an individual's RFC, meaning "what an individual can still do despite his or her limitations." SSR 96-8p. The ALJ makes that determination based upon medical evidence as well as other evidence, including testimony by the claimant. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, an ALJ must consider all of the relevant evidence in the record, even evidence relating to limitations that are not severe. *Id.*; *see* 20 C.F.R. § 404.1529(a). The ALJ must also "articulate in a rational manner the reasons for [her] assessment of a claimant's residual functional capacity," *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), in a way that builds "an accurate and logical bridge from the evidence to the conclusion," *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007); *see Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (holding that an ALJ's failure to explain how they arrived at RFC conclusions, in itself, warrants reversal); SSR 96-8p at *7. Failure to meet those standards requires reversal. *See Stewart*, 561 F.3d at 684; *Giles*, 483 F.3d at 487; *Briscoe*, 425 F.3d at 352.

Mr. Burke's challenge to the ALJ's RFC specifically related to the RFC's description of his physical limitations in the workplace. (DE 12 at 12.) The ALJ's RFC determination

concluded Mr. Burke "can perform light work . . . except that [he] can stand and/or walk, in combination, for two hours in an eight hour workday, and he can sit for six hours in an eight hour workday." (R. 1317–18.) It also stated that Mr. Burke "can occasionally climb ramps and stairs as well as occasionally balance, stoop, kneel, and crouch." (R. 1318.)

The most glaring problem with the ALJ's decision is that she never explained how she concluded that Mr. Burke could stand, walk, sit, climb, balance, stoop, kneel, and crouch for the time limits the RFC imposed. (R. 1310–25.) In addition to that though, the Court finds that the ALJ also erred by only giving a cursory explanation for how she determined that Mr. Burke was capable of light work. The ALJ only discussed light work briefly in her narrative discussion of the RFC. She first discussed it when she noted that findings from an examining doctor, Dr. Onamusi, "indicated the claimant is capable of up to light physical work" and stated that those findings "were consistent with the overall record." (R. 1323.) She then noted that a state agency determination had also "assessed a light residual functional capacity with additional postural limitations." (*Id.*) Finally, she concluded without much elaboration that the RFC "is supported by the objective medical evidence and other evidence in the file," that "[l]imiting the claimant to light work is consistent with his lower extremity edema and some reports of abnormal gait," and that it is also supported by "the claimant's obesity and diabetic neuropathy." (R. 1323.) The key problem with that discussion is that she never once explained why she thought Dr. Onamusi's findings were consistent with the overall record, if or why the state agency determination about Mr. Burke's physical capabilities deserved specific weight, or how exactly the light work assessment was consistent with Mr. Burke's diagnosed medical problems. The lack of any explanation about the more specific, time-based physical limitations coupled with only a cursory mention of findings related to a working ability at the light level creates a problematic gap in the

10

ALJ's reasoning that leaves the Court to speculate as to how exactly she weighed all of the evidence in the extensive record.

And the Commissioner's briefing does not help fill in that gap. (DE 15.) The Commissioner, when arguing that the ALJ supported the physical findings in the RFC, followed the ALJ's lead and only generally stated that the ALJ based her finding on the analyzed medical evidence showing Mr. Burke "had chronic venous insufficiency, lower extremity varicosity, venous stasis dermatitis, and obesity, which resulted in exertional and postural limitations." (DE 15 at 16; R. 1270–72, 1319–20, 2088, 2091, 2168.) The Commissioner also noted in support that Mr. Burke had a history of lower extremity edema and decreased range of motion and swelling in his left foot but was generally found to have maintained a normal gait and station during the course of his medical treatments as well as that Mr. Burke had at one point walked around an amusement park for an unspecified amount of time and developed a sore on his toes that had to be treated. (*Id.*; R. 2100–01, 2106, 2109, 2386, 2392.) While all of that is true, both the ALJ's decision and the Commissioner's briefing largely provide a summary of medical conditions with no analysis about how the conditions specifically support the RFC.

That lack of explanation supports remand because the ALJ failed to build an appropriate logical bridge between the medical evidence and her RFC. The ALJ's sparse discussion of the physical limitations in the RFC, which simply listed the two medical opinions without explaining how they were supported by the rest of the medical record or how they supported the light work determination, fell short of the regulatory requirement that the RFC assessment "include a narrative discussion describing how the evidence supports each [RFC] conclusion, citing specific medical facts." *See Newell v. Astrue*, 869 F. Supp. 2d 875, 890–91 (N.D. Ill 2012); SSR 96-8p at *7. Further, the ALJ's failure to explain at all how she came to the specific standing, walking,

11

sitting, and other physical limitations in particular also warrants reversal. *Briscoe*, 425 F.3d at 352. And finally, because of the sparse explanation, the Court is forced to speculate as to why the ALJ came to her conclusions, which is a clear sign that the ALJ failed to build the required logical bridge. *See Moore*, 743 F.3d at 1127–28 ("[T]he reviewing court should not have to speculate as to the basis for the RFC limitations."). The Court thus finds remand is necessary.

While the Court finds remand is required on those bases, it goes on to explain in more detail why the ALJ's error in not offering a fuller explanation should not be considered harmless error. The main problem the Court finds is that the two opinions in the record the ALJ appears to have relied upon in coming to her decision are quite dated and were offered without explaining how they continue to reflect Mr. Burke's ongoing limitations.

The Court begins with Dr. Onamusi's opinion. Dr. Onamusi rendered his opinion in January 2015 after performing a physical examination of Mr. Burke. (R. 366–67.) He found that Mr. Burke had bilateral lower extremity swelling with pitting to the knees, non-palpable pedal pulses, leathery skin, and a reduced range of motion due to his obesity and swelling in his lower extremities. (R. 366.) Based on those findings, Dr. Onamusi opined that Mr. Burke was, at the time, "capable of functioning at sedentary to light physical demand levels as defined in the Dictionary of Occupational Titles." (R. 367.) Dr. Onamusi did not, however, provide specific findings about Mr. Burke's ability to stand, walk, sit, carry, and otherwise ambulate during a normal eight-hour workday. (*Id.*) The ALJ gave Dr. Onamusi's opinion "great weight" in her decision because "[h]is mostly normal physical findings were consistent with the overall record." (R. 1323.) But the ALJ never explained how clear medical limitations like bilateral lower extremity swelling with pitting to the knees and a reduced range of motion due to obesity could be considered "mostly normal findings." And she never explained further how Dr. Onamusi's

opinion matched with the record to the extent it warranted great weight. Finally, because Dr. Onamusi never opined about specific limitations to activities like standing, walking, and sitting, it is not clear to the Court how the ALJ could rely on the doctor's opinion to support the specific physical limitations in her RFC assessment.

The Court next moves to the somewhat cryptically referred to "state agency determination" that the ALJ noted assessed a light residual functional capacity with additional postural limitations. (R. 1323.) It is not clear from reading the decision, but that opinion refers to an April 2015 non-examining agency medical opinion from a Dr. Sands. (R. 127–30.) And while the ALJ also did not explain this in her decision, Dr. Sands's opinion matched up almost perfectly with her ultimate RFC assessment. Dr. Sands specifically concluded that Mr. Burke could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for two hours with normal breaks and sit for six hours with normal breaks during an eight-hour workday. (R. 128–29.) Dr. Sands's opinion also matched with the RFC's assessment that Mr. Burke could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. (*Id.*) Because of the close match, the Court presumes that the ALJ took the physical limitations she cited in the RFC from this medical opinion. Again, however, the Court is inappropriately left to speculate about that because the ALJ problematically never made that clear in her decision.

The lack of explanation surrounding Dr. Sands's opinion is particularly stark when looking at the prominent role Dr. Sands's opinion played in the ALJ's first decision that was remanded and vacated on appeal. In that earlier decision, the ALJ explained in detail why she believed that the limitations Dr. Sands assessed were appropriate to include in the RFC. In doing so, the ALJ compared the opinions of Dr. Sands, Dr. Onamusi, and a third doctor, Dr. Eskonen, explained why Dr. Sands's opinion was "consistent with [her] review of the evidence" and her

discussions of the evidence in the rest of the opinion, and ultimately concluded Dr. Sands's opinion was the most appropriate to adopt. (R. 27–28.) As already discussed, that same level of discussion was inexplicably absent from the ALJ's second decision now under consideration. (R. 1310–26.)

And the Court cannot simply adopt the ALJ's prior reasoning from the earlier decision here. That is true first because the ALJ never explicitly adopted that earlier reasoning herself in her new decision. *See Roxbury v. Colvin*, No. 13-C-1385, 2014 WL 4115862, at *6, 12–13 (E.D. Wis. Aug. 19, 2014) (finding it proper to consider reasoning in a prior Commissioner decision that was remanded and vacated only when the ALJ re-adopted the reasoning and the remanding court had specifically already approved of the reasoning). It is also true because the prior decision, including the RFC and the ALJ's reasoning to support it, have no precedential value given that the Appeals Council vacated the decision with instructions to issue a new opinion. (R. 1565–66); *see Anthony L. v. Berryhill*, No. 17 CV 6608, 2019 WL 1354419, at *7 (N.D. Ill. Mar. 26, 2019) (holding that an Appeals Council order vacating a prior ALJ decision nullified the prior decision's findings, including the RFC assessment); *see also Leigh v. Engle*, 669 F. Supp. 1390, 1393 (N.D. Ill. 1987) (explaining that vacated factual findings have "no continued vitality" except insofar as another court may have adopted the findings and made them its own). Thus, the Court is simply left with the ALJ's cursory mention of the "state agency determination" as the extent of the explanation in this second decision.

The ALJ's lack of discussion and justification for her reliance both on Dr. Onamusi's opinion and even more importantly Dr. Sands's opinion given how closely it hewed to the eventual RFC is particularly important, and not harmless error, because of the age of the opinions and amount of subsequent evidence at the time the ALJ rendered her most recent

14

decision. Both Dr. Onamusi's and Dr. Sands's opinions preceded the ALJ's new decision by four years. And while Dr. Onamusi did examine Mr. Burke, Dr. Sands simply relied on the medical records available in April 2015, which are only a fraction of the medical records now available. (R. 124–26.) The dated nature of both assessments leaves an open question as to whether Dr. Onamusi would have made a different assessment if he had examined Mr. Burke more recently as well as whether Dr. Sands may have reached a different decision when faced with all of the new evidence in the approximately four-year period between the April 2015 assessment and the ALJ's opinion. It is also not clear to the Court that the ALJ considered this timing issue or had strong reasons to discount it before choosing to cite and seemingly rely heavily on the two opinions in her decision. The ALJ, in her prior, now vacated decision from 2017, recognized the timing problem and admitted some hesitancy about adopting Dr. Sands's and Dr. Onamusi's opinions given they were "somewhat dated" even back in 2017. (R. 28.) But the ALJ explained away the concern at the time by detailing why she believed the evidence before her showed that there had been "no appreciable change in the claimant's condition or any level of deterioration" between the time the doctors gave their opinions and the date of the decision. (*Id.*) The ALJ had no similar analysis in her most recent decision, which leaves the Court to speculate as to whether she still had good reasons for thinking the opinions were valid in light of the subsequent evidence. And those unanswered questions given the lack of explanation as to why the opinions remained consistent with the record is not harmless error.

While it is not the Court's role in social security appeals to weigh portions of the record against each other, *Lopez*, 336 F.3d at 539, the Court notes that even a brief look at the evidence in the record after April 2015 indicates a possibility that Dr. Onamusi and Dr. Sands's opinions may not be fully consistent with that record and that the opinions may benefit from the

opportunity to be updated. In coming to that conclusion, the Court specifically cites Mr. Burke's most recent hearing testimony in which he explained his increasingly more limited physical capabilities, including that sitting in a chair without his legs elevated for even a short period of time causes him pain, which the ALJ and the medical evidence does not appear to address or rebut. (R. 1351–57.) The Court also relies on the extensive amount of medical evidence that has been made part of the record since 2015, which shows Mr. Burke's ongoing and at times worsening struggles with serious obesity (R. 2197, 2203, 2247, 2254, 2454, 2465, 2651, 2853, 2943), concerns of neuropathy causing numbness, tingling, and sharp pains in his hands and feet (R. 2174, 2390, 2529, 2545, 2844, 2880, 2908, 2956), concerns of limited mobility based on his diagnosed venous insufficiency and persistent swelling in his legs and feet (R. 2038–44, 2091, 2101, 2106, 2117, 2129, 2145, 2175–76, 2386–88, 2404, 2546–47), and new concerns of shoulder, neck, and back problems for which Mr. Burke has sought treatment (R. 2262, 2264, 2284, 2309, 2316, 2908–2935). It will be up to an ALJ on remand to determine whether this new evidence outweighs the prior opinions or if new opinions must be sought. In making that determination, the ALJ should specifically note how he or she is arriving at the decision, and, if he or she is including any specific physical limitations in an RFC based on those or any other opinions, he or she must make clear why the decisions are supported by the available medical evidence.

    The Court recognizes that an ALJ need only minimally articulate her justification for accepting or rejecting specific evidence of disability, *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). But inherent in that requirement is that the ALJ minimally articulate her justifications. The ALJ did not minimally articulate her reasoning here for incorporating the specific physical findings included in her RFC

or relying on the evidence she appeared to rely on. Without that articulation, the Court can only guess as to why she came to that result, and even then, the Court cannot find that the RFC is supported by substantial evidence. A remand is thus required. *See Terry*, 580 F.3d at 475; *Stewart*, 561 F.3d at 684.

## V.     Conclusion

For the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 21, 2021

                                               /s/ JON E. DEGUILIO
                                               Chief Judge
                                               United States District Court